**REDACTED**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

Master File No. 12-md-02311
Honorable Marianne O. Battani

In re: EXHAUST SYSTEMS

2:16-cv-03702
2:16-cv-03703

THIS RELATES TO:

ALL DEALERSHIP ACTIONS
ALL END-PAYOR ACTIONS

**Oral Argument Requested**

## DEFENDANT MERITOR, INC.'S MOTION TO DISMISS END-PAYORS AND AUTO DEALERS' CLASS ACTION COMPLAINTS FOR FAILURE TO STATE A CLAIM

Defendant Meritor, Inc. respectfully moves this Court for an Order dismissing the Auto Dealers' and End-Payors' class action complaints in their entirety as to Meritor, Inc. for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). This motion is based on the accompanying brief, oral argument of counsel, and such other and further material as the Court may consider.

As required by Local Rule 7.1(a), counsel for Meritor, Inc. sought concurrence from counsel for the Auto Dealer and End-Payor Plaintiffs on September 15, 2016.  Counsel for Meritor, Inc. explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, Meritor, Inc. prays that the Court the Auto Dealers' and End-Payors' class action complaints in their entirety as to Meritor, Inc. for failure to state a claim pursuant to

Fed. R. Civ. P. 12 (b)(6).

Gretchen Jankowski

Cindy D. Hinkle

Wendelynne J. Newton

Buchanan, Ingersoll & Rooney, P.C.

One Oxford Centre

301 Grant Street, 20th Floor

Pittsburgh, PA  15219-1410

(412) 562-8800

Gretchen.jankowski@bipc.com

Cindy.hinkle@bipc.com

Wendelynne.newton@bipc.com

Respectfully submitted,

s/Larry J. Saylor

Larry J. Saylor  (P28165)

A. Michael Palizzi (P47262)

Miller, Canfield, Paddock and Stone, PLC

150 W. Jefferson Avenue, Suite 2500

Detroit, MI  48226

(313) 963-6420

saylor@millercanfield.com

palizzi@millercanfield.com

Attorneys for Meritor, Inc.

Dated:  September 15, 2016

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In re: EXHAUST SYSTEMS | 2:16-cv-03702 2:16-cv-03703 |
| THIS RELATES TO: ALL DEALERSHIP ACTIONS ALL END-PAYOR ACTIONS | **Oral Argument Requested** |

**DEFENDANT MERITOR, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS END-PAYORS AND AUTO DEALERS' CLASS ACTION <u>COMPLAINTS FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

QUESTIONS PRESENTED.................................................................................... vii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.     PLAINTIFFS' DAMAGE CLAIMS AGAINST MERITOR ARE BARRED BY WITHDRAWAL FROM THE ALLEGED CONSPIRACY AND BY THE STATUTES OF LIMITATIONS.................................................................. 2

     A.     Meritor Withdrew from the Alleged Conspiracy When it Sold its Exhaust System Business in 2007, and Withdrawal Bars Any Claim Based on Conduct After that Date. ..................................................... 2

     B.     Plaintiffs' Claims Based on Conduct Before Meritor's Sale of its Exhaust System Business are Time-Barred. ........................................ 6

     C.     Plaintiffs Have Failed Adequately to Allege Fraudulent Concealment as to Meritor. ................................................................ 7

II.    PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AGAINST MERITOR SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH A COGNIZABLE DANGER OF A RECURRENT ALLEGED VIOLATION BY MERITOR.................................................................................................. 10

III.   PLAINTIFFS FAIL TO SATISFY THE PLEADING REQUIREMENTS OF *TWOMBLY* AND *IQBAL*.............................................................................. 12

     A.     Plaintiffs Have Failed to Plausibly Plead That Meritor Participated in An Alleged Price-Fixing Conspiracy........................................................ 12

CONCLUSION AND RELIEF REQUESTED ........................................................ 19

LIST OF EXHIBITS TO MOTION TO DISMISS ................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................12

*In re Automotive Parts Antitrust Litig.*,
  29 F. Supp. 3d 982, 1002 (E.D. Mich. 2014).............................................3

*In re Automotive Parts Antitrust Litig. (In re Wire Harness Cases)*,
  2013 WL 2456584 (E.D. Mich. June 6, 2013)...........................................10

*In re: Automotive Parts Antitrust Litig. (In re: Wire Harness Systems)*,
  2015 WL 10372437 (E.D. Mich. Dec. 30, 2015) ........................................9, 15, 16

*B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*,
  439 F.3d 653 (10th Cir. 2006) ...................................................................11

*Bassett v. National Collegiate Athletic Ass'n.*,
  528 F.3d 426 (6th Cir. 2008) .....................................................................15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................ *passim*

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
  479 U.S. 104 (1986)...................................................................................11

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) .......................................................................8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2010 WL 9543295 (N.D. Cal. Feb. 5, 2010) ...............................................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) .............................................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2014 WL 1091589 (N.D. Cal. March 13, 2014).........................................5

*CBC Companies, Inc. v. Equifax, Inc.*,
  561 F.3d 569 (6th Cir. 2009) .....................................................................12

*Chiropractic Co-Op Ass'n of Mich. v. American Med. Ass'n*,
  867 F.2d 270 (6th Cir. 1989) .......................................................................3

*Concord Assocs., L.P. v. Entm't Props. Trust*,
  2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014).......................................................13

*DataCell Ehf. v. Visa, Inc.*,
  2015 WL 4624714 (ED Va. July 30, 2015) ......................................................18

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
  523 F.2d 389 (6th Cir. 1975) ...........................................................6, 7, 11

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
  903 F. Supp. 2d 198 (S.D.N.Y. 2012).............................................................11

*Drug Mart Pharmacy Corp. v. American Home Prods. Corp.*,
  288 F. Supp. 2d 325 (E.D.N.Y. 2003) ...........................................................3, 4

*Dry Cleaning & Laundry Institute of Detroit, Inc. v. Flom's Corp.*,
  841 F. Supp. 212 (E. D. Mich. 1993).................................................................9

*Erie Cty., Ohio v. Morton Salt, Inc.*,
  702 F.3d 860 (6th Cir. 2012) ...................................................................17, 18

*In Re Fresh and Process Potatoes Antitrust Litig.*,
  834 F. Supp. 2d 1141 (D. Idaho 2011) ......................................................16, 17

*In re Fresh and Process Potatoes Antitrust Litig.*,
  843 F. Supp. 2d 1141 (D. Idaho 2011) ............................................................18

*Friedman v. Estate of Presser*,
  929 F.2d 1151 (6th Cir. 1991) .........................................................................7

*Hinds County, Miss. v. Wachovia Bank, N.A.*,
  620 F. Supp. 2d 499 (S.D.N.Y. 2009)..................................................16, 18, 19

*Int'l Constr. Products LLC v. Caterpillar Inc.*,
  2016 WL 264909 (D. Del. Jan. 21, 2016)........................................................17

*Klehr v. A. O. Smith Corp.*,
  521 U.S. 179 (1997).........................................................................................6

*Krause v. Perryman*,
  827 F.2d 346 (8th Cir. 1987) ...........................................................................4

*In re Lithium Ion Batteries Antitrust Litig.*,
  2016 WL 1054584 (N.D. Cal. 2016) .................................................................5

*Loren Data Corp. v. GXS, Inc.*,
  501 F. App'x 275 (4th Cir. 2012) ...................................................................13

*In re Milk Prods. Antitrust Litig.*,
    84 F. Supp. 2d 1016 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999) ............................7

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999), *as amended*, 211 F.3d 1224 (11th Cir. 2000) .............3, 4, 5, 6

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002).................................................................................3

*Osborn v. Visa, Inc.*,
    797 F.3d 1057 (D.C. Cir. 2015) ...........................................................................5

*Pinney Dock & Transp. Co v. Penn Cent. Corp*,
    838 F.2d 1445 (6th Cir.), *cert. denied*, 488 U.S. 880 (1988)..............................8, 9

*In re Pool Products Distribution Market Antitrust Litig.*,
    988 F. Supp. 2d. 696 (E.D. La. 2013), appeal docketed, No. 16-30885 (5th
    Cir. Aug. 2, 2016) ....................................................................................8, 18

*Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*,
    2015 WL 4987751 (E.D.N.Y. Aug. 19, 2015).........................................................3

*In re Processed Egg Prods. Antitrust Litig.*
    2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) .........................................................8

*In re Processed Egg Products Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ..................................................................13

*In re Refrigerant Compressors Antitrust Litig.*,
    795 F.Supp.2d 647 (E.D. Mich. 2011)...............................................................7, 8

*In re Refrigerant Compressors Antitrust Litig.*,
    92 F. Supp. 3d 652,658 (E.D. Mich. 2015)............................................................3

*In re Rubber Chems. Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ..................................................................5

*Ruttenberg v. Jones*,
    283 F. App'x 121 (4th Cir. 2008) ......................................................................13

*In re Travel Agent Commission Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ............................................................................18

*United States v. Goldberg*,
    401 F.2d 644 (2d Cir. 1968)................................................................................4

*United States v. Lothian*,
    976 F.2d 1257 (9th Cir. 1992) .........................................................................4, 6

*United States v. Nerlinger*,
  862 F.2d 967 (2d Cir. 1988)................................................................4

*United States v. Read*,
  658 F.2d 1225 (7th Cir. 1981) .............................................................6

*United States v. Steele*,
  685 F.2d 793 (3d Cir. 1982)................................................................4

*United States v. United States Gypsum Co.*,
  438 U.S. 422 (1978)........................................................................3, 5

*In re Warfarin Sodium Antitrust Litig.*,
  214 F.3d 395 (3d Cir. 2000)..............................................................11

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016)........................................13

**Statutes**

15 U.S.C. § 1 ....................................................................................17

15 U.S.C. § 15b .............................................................................6, 10

15 U.S.C. § 26 .......................................................................10, 11, 12

PL 108-237, § 213, 15 U.S.C. § 1 Note ............................................14

MCL 445.781 .....................................................................................6

MCL 445.784(2) .................................................................................3

**Court Rules**

F.R.Civ.P. 9(b) ...............................................................................7, 8

Fed. R. Civ. P. 12(b)(6).............................................................. *passim*

**Other Authorities**

Uniform State Antitrust Act, § 11 .......................................................6

Uniform State Antitrust Act,  § 14 ......................................................3

**QUESTIONS PRESENTED**

1.  Does Meritor's sale of its exhaust system business in May 2007 constitute withdrawal from the alleged conspiracy, so that Plaintiffs' claims against Meritor based on alleged actions of other Defendants after the sale must be dismissed?

2.  Do the applicable statutes of limitations bar Plaintiffs' claims against Meritor based on its alleged actions before it exited the exhaust system business in May 2007?

3.  Should Plaintiffs' claims for injunctive relief against Meritor be dismissed because there is no cognizable danger of a recurrent violation by Meritor, where there is no allegation that Meritor is likely to reenter the exhaust system business, much less engage in an antitrust conspiracy?

4.  Have Plaintiffs plausibly pleaded that Meritor participated in the alleged conspiracy?

**BRIEF IN SUPPORT**

**INTRODUCTION**

The Exhaust Systems case is different than the other automotive parts antitrust cases entertained by this Court. It is the only case where no Defendant has been indicted, pled guilty or paid criminal fines. Even more importantly, <u>Meritor</u> is different from the other Defendants. Both sets of Plaintiffs[1] concede that Meritor sold its exhaust system business and have not been involved in that business for over nine years. (*See* 2:16-cv-11082, Doc. 1, 27 ("EPP Compl."), ¶ 84; 2:16-cv-11077, Doc. 1 ("ADP Compl."), ¶ 110).[2] Plaintiffs acknowledge not only that Meritor sold the business, but also that Meritor's former exhaust system business assets were later acquired in 2009 by co-defendant Faurecia. (See EPP Compl. ¶ 83, ADP Compl. ¶ 109). There is no allegation that Meritor has had any involvement in the exhaust business since its sale in 2007; and as a result, there is no allegation (nor could there be) that Meritor has had any involvement in the alleged conspiracy after selling its exhaust system business assets.

Meritor's sale of its exhaust system business constituted "withdrawal" from any alleged antitrust conspiracy. As a matter of law, Meritor cannot be legally responsible for any harm done by subsequent conspiratorial actions of alleged former co-conspirators. Further, Meritor is not liable for any alleged actions before May 2007 because the statutes of limitations have run. Plaintiffs' conclusory allegations of fraudulent concealment are legally insufficient as against Meritor because there are no allegations, let alone any precise or particular allegations, that

---

[1] Complaints have been filed the Exhaust System case by "End Payor" Plaintiffs ("EPPs") and Auto Dealer Plaintiffs ("ADPs"). The complaints are substantially identical. As discussed in Part II below, all of the plaintiffs are indirect purchasers of the parts in issue.

[2] Plaintiffs allege Meritor's predecessor, ArvinMeritor, sold its exhaust business in 2004, but ArvinMeritor's SEC filings disclose that the sale occurred on May 17, 2007. *See* Footnote 3, below. This Court can take judicial notice of the SEC filings in deciding a motion under Fed. R. 12(b)(6). *See id.*

Meritor fraudulently concealed any actions or facts, either before or after the 2007 sale of its exhaust system business.  Plaintiffs' claims for injunctive relief against Meritor also fail, because Plaintiffs cannot establish a cognizable danger of a recurrent alleged violation by Meritor as a matter of law. Moreover, Plaintiffs have not plausibly pled that Meritor participated in an alleged price-fixing conspiracy. Both Complaints should be dismissed as to Meritor pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I.   PLAINTIFFS' DAMAGE CLAIMS AGAINST MERITOR ARE BARRED BY WITHDRAWAL FROM THE ALLEGED CONSPIRACY AND BY THE STATUTES OF LIMITATIONS.

#### A.   Meritor Withdrew from the Alleged Conspiracy When it Sold its Exhaust System Business in 2007, and Withdrawal Bars Any Claim Based on Conduct After that Date.

Meritor withdrew from the alleged conspiracy when it sold its exhaust system business in 2007, and Plaintiffs have therefore failed to state a claim on which relief can be granted based on any conduct after that date.

Plaintiffs allege that Tenneco provided bid information to Meritor (then known as ArvinMeritor, Inc.) regarding exhaust system components in 2003 and 2005. (*See* EPP Compl. ¶¶ 3, 169-71; ADP Compl. ¶¶ 3, 193-95).  Plaintiffs further allege that ArvinMeritor sold its exhaust system business in 2004 (*see* EPP Compl. ¶ 84; ADP Compl. ¶ 110). In reality, ArvinMeritor sold substantially all of the assets and certain liabilities of its exhaust system business to non-party EMCON Technologies Holdings, Ltd. on May 17, 2007, as evidenced in

its publicly announced SEC filings, which the Court can consider in deciding this motion.[3] Plaintiffs do not allege that Meritor participated in or benefited from the alleged conspiracy after the sale.

In *United States v. United States Gypsum Co.*, 438 U.S. 422, 464-65 (1978), the Supreme Court held that "[a]ffirmative acts inconsistent with the object of a conspiracy and communicated in a manner reasonably calculated to reach co-conspirators have generally been regarded as sufficient to establish withdrawal or abandonment" of a conspiracy." *Accord, Chiropractic Co-Op Ass'n of Mich. v. American Med. Ass'n*, 867 F.2d 270, 274-75 (6th Cir. 1989). It is not necessary for the conspirator to disclose the allegedly unlawful scheme to the authorities. *United States Gypsum*, 438 U.S. at 464-65; *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), *as amended*, 211 F.3d 1224 (11th Cir. 2000).

Meritor's affirmative act of a publicly announced sale of its exhaust business constitutes a clear "withdrawal" from any alleged antitrust conspiracy, and Meritor is not responsible for the later acts of its alleged co-conspirators. *Morton's Market*, 198 F.3d at 838, *citing United States v. Lowell*, 649 F.2d 950, 955 (3d Cir. 1981).[4] *Accord, Drug Mart Pharmacy Corp. v. American Home Prods. Corp.*, 288 F. Supp. 2d 325, 328-31 (E.D.N.Y. 2003) (manufacturers withdrew by

---

[3] See footnote 2 above.  ArvinMeritor publicly announced in a Form 8K filed with the Securities Exchange Commission on May 17, 2007 and a Form 8K/A filed on June 1, 2007 (Ex. 1 and 2) that ArvinMeritor sold its exhaust system business on May 17, 2007 to One Equity Partners who renamed it EMCON. The Court can take judicial notice of SEC filings in considering a motion under Rule 12(b)(6) because they are matters of public record whose authenticity cannot reasonably be questioned.  *See, e.g., In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002); *In re Refrigerant Compressors Antitrust Litig.*, 92 F. Supp. 3d 652,658 (E.D. Mich. 2015).

[4] All 30 states, by statute or case law, look to federal case law to interpret their state antitrust statutes.  See, e.g., MCL 445.784(2) (Sec. 14 of the Uniform State Antitrust Act) ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes").  *See In re Automotive Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1002 (E.D. Mich. 2014).

3

taking affirmative steps inconsistent with the alleged antitrust conspiracy); *Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.,* 2015 WL 4987751, at *6 (E.D.N.Y. Aug. 19, 2015) (dismissing certain defendants in antitrust action on motion for judgment on the pleadings for purchases after their withdrawal).

This Court has the authority at this time to dismiss Meritor in light of its undisputed withdrawal from the alleged conspiracy. "[W]hen material facts are not disputed, courts have decided the issue [of withdrawal] as a matter of law." *Drug Mart*, 288 F. Supp. 2d at 329, citing *United States v. Goldberg*, 401 F.2d 644, 648-49 (2d Cir. 1968), and *Morton's Market*, 198 F.3d at 839. *Morton's Market* is closely on point. There, Plaintiffs alleged that several dairies, including Pet, Inc., engaged in a conspiracy to fix the price of milk sold to commercial customers commencing in the 1970s. Pet sold its dairy in 1985. Plaintiffs filed a class action suit in 1993. 198 F.3d at 826-27. The Eleventh Circuit held that Pet withdrew from the conspiracy when it sold its dairy and did nothing further to assist the conspiracy:

> Did Pet effectively withdraw? With the sale of its dairy, Pet certainly "retired" and totally severed its ties to the milk price-fixing conspiracy. It did nothing more to assist or participate in the price-fixing activities of the other dairies. This retirement was communicated to the other dairies by the media. They knew that from that time on, Pet would not lend its services to the conspiracy. Thus, the purposes of the conspiracy were defeated at least as to Pet. We conclude, therefore, that Pet did effectively withdraw from the price-fixing conspiracy upon the sale of its dairy.

*Id*. at 839.[5]

---

[5] In accord are *United States v. Lothian*, 976 F.2d 1257, 1264 (9th Cir. 1992) (defendant withdrew from alleged conspiracy when he resigned his employment); *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988) (defendant withdrew when he closed a securities account); *Krause v. Perryman*, 827 F.2d 346, 351 (8th Cir. 1987) (defendant withdrew when he sold his stock and resigned as president of a corporation); *United States v. Steele*, 685 F.2d 793, 803 (3d Cir. 1982) (defendant withdrew when he resigned his employment and played no further role in the alleged conspiracy); *Goldberg*, 401 F.2d at 648-49 (defendant withdrew when he resigned his employment and notified his customers).

4

*Morton's Market* has repeatedly been cited for the twin propositions that (1) a defendant withdraws from an alleged antitrust conspiracy when it sells its business and has no further involvement in or financial benefit from the alleged conspiracy; and (2) after withdrawal, a defendant's liability, if any, is limited to pre-withdrawal price-fixing activity.[6]

Plaintiffs here do not allege that Meritor had further involvement in or received further financial benefit from the alleged conspiracy following the sale of its exhaust system business. Plaintiffs' conclusory allegation that Meritor "retained some or all of the liabilities" when it sold the exhaust system business to EMCON (*see* EPP Compl. ¶ 84; ADP Compl. ¶ 110), even if true, would not amount to continued involvement in or benefit from the alleged conspiracy. A liability is a detriment, not a benefit. And in any event, Meritor's 2007 public SEC filings disclose that Meritor retained no obligation after the sale amounting to continued participation in or benefit from the exhaust business.[7] Further, Plaintiffs acknowledge that in 2009, EMCON was acquired

---

[6] *See In re Lithium Ion Batteries Antitrust Litig*., 2016 WL 1054584, *4 (N.D. Cal. 2016); *In re Cathode Ray Tube (CRT) Antitrust Litig*., 2014 WL 1091589, *8 (N.D. Cal. March 13, 2014); *In re Cathode Ray Tube (CRT) Antitrust Litig*., 2010 WL 9543295 (N.D. Cal. Feb. 5, 2010); *In re Rubber Chems. Antitrust Litig*., 504 F. Supp.2d 777, 790 (N.D. Cal. 2007). While some courts faced with very unique circumstances have found questions of fact as to whether the defendant continued to participate in or benefit from the alleged conspiracy after selling or closing its business, Plaintiffs have not alleged any of those unique factual circumstances here. For example, in *Osborn v. Visa, Inc*., 797 F.3d 1057, 1067-68 (D.C. Cir. 2015), the defendants continued to be bound by the challenged rules governing ATM service fees. In *In re Cathode Ray Tube (CRT) Antitrust Litig*., 2013 WL 4505701, at **14-15 (N.D. Cal. Aug. 21, 2013), Phillips and LG retained ownership of a joint venture that continued in the business. In *Lithium Ion*, Toshiba continued participation in a battery trade association, continued to own and license battery technology, and continued to sell battery packs for three more years. *See* 2016 WL 1054584 at *4.

[7] With the Form 8K/A filed with the SEC on June 1, 2007, ArvinMeritor filed a copy of its Amended and Restated Purchase Agreement with EMCON. In Section 2.02 of the Agreement, ArvinMeritor retained certain pre-sale liabilities, e.g., pre-closing environmental and product warranty obligations. In Sections 14.01 and 14.02, ArvinMeritor agreed to indemnify EMCON for breach of the representations and warranties in the Agreement, or failure to perform any covenant or agreement in connection with the sale, and EMCON agreed to indemnify ArvinMeritor for liabilities related to post-closing activities related to the business.

by Faurecia, a defendant in this litigation (EPP Compl. ¶ 83; ADP Compl. ¶ 109). The 2009 sale even further distanced Meritor from any alleged conspiracy.

In short, under the holdings in *United States Gypsum*, *Morton's Market* and their many progeny, Meritor fully withdrew from any alleged conspiracy with its publicly announced sale of its exhaust business assets in 2007, and has had no further involvement in or benefit from the business after the sale. "A defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from a conspiracy." *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992), *citing Levine v. United States*, 383 U.S. 265, 266 (1966). Meritor therefore is entitled to dismissal of all claims against it based on any conduct in the exhaust system business occurring after its sale of that business on May 17, 2007.

**B.**     **Plaintiffs' Claims Based on Conduct Before Meritor's Sale of its Exhaust System Business are Time-Barred.**

"A defendant's withdrawal from [a] conspiracy starts the running of the statute of limitations as to him." *United States v. Read*, 658 F.2d 1225, 1233 (7th Cir. 1981). As supported above, Meritor fully withdrew from any alleged conspiracy upon the publicly announced sale of its exhaust business assets in 2007. The statutes of limitations as to Meritor therefore began to run on May 17, 2007. Damage claims under the federal antitrust laws are governed by a four year statute of limitations.  15 U.S.C. § 15b; *Klehr v. A. O. Smith Corp.*, 521 U.S. 179, 189-90 (1997). The statutes of limitations for Plaintiffs' 32 state law antitrust and unjust enrichment claims range from two to six years.  *See, e.g.*, MCL 445.781 (Uniform State Antitrust Act, § 11) (four years).[8]

The *Morton's Market* court held that because the suit was filed more than four years after

---

[8] A chart showing the statutes of limitations applicable to Plaintiffs' state-law claims is attached as Ex. 3.

Pet sold its business, all claims against Pet were barred by the four-year statute of limitations, unless the statute was equitably tolled by fraudulent concealment. 211 F.3d at 1224. Analogously, in *Dayco Corp. v. Goodyear Tire & Rubber Co*., 523 F.2d 389, 393-94 (6th Cir. 1975), the Sixth Circuit held that Dayco's antitrust claim arose "no later than 1961 when Dayco sold its tire manufacturing facilities to Firestone," and was time barred when Dayco filed suit 13 years later. Here, the Complaints were not filed until March 2016. The Complaints lack any allegations of conspiracy by Meritor after 2005, and Meritor withdrew from any alleged conspiracy when it sold its exhaust system business effective May 17, 2007.  Any claims against Meritor based on alleged conduct in the exhaust systems business occurring prior to its sale of the business on May 17, 2007 are time barred by the statutes of limitations, and should be dismissed..

### C.   Plaintiffs Have Failed Adequately to Allege Fraudulent Concealment as to Meritor.

Plaintiffs' allegations of fraudulent concealment are inadequate to toll the statutes and avoid the bar of the statutes of limitations as to Meritor. In this case there are no allegations, let alone any precise or particular allegations, that Meritor fraudulently concealed any actions or facts either before or after the 2007 sale of its exhaust system business.

"Under F.R.Civ.P. 9(b), the party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity." *Dayco*, 523 F.2d at 394 (affirming dismissal of antitrust complaint where allegations of fraudulent concealment were not pleaded with particularity). *Accord*, *Friedman v. Estate of Presser*, 929 F.2d 1151, 1160 (6th Cir. 1991); *In re Milk Prods. Antitrust Litig*., 84 F. Supp. 2d 1016, 1024-25 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999).  In order to plead that the statute of limitations is tolled due to fraudulent concealment, a plaintiff must allege three elements: "(1) wrongful concealment of their actions

7

by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco*, 523 F.2d at 394. *Accord*, *In re Refrigerant Compressors Antitrust Litig.*, 795 F.Supp.2d 647 (E.D. Mich. 2011); *In re Processed Egg Prods. Antitrust Litig.* 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) ("*Eggs I*").

To comply with Rule 9(b)'s strictures, a plaintiff must "describe the circumstances of the alleged fraud with precise allegations of date, time, or place." *Eggs I*, 2001 WL 5980001 at *4 (quoting Fed. R. Civ. P. 9(b)). There must be "distinct averments" as to the underlying facts. *Pinney Dock & Transp. Co v. Penn Cent. Corp*, 838 F.2d 1445, 1467 (6th Cir.), *cert. denied*, 488 U.S. 880 (1988).  In *In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647 (E.D. Mich. 2011), Judge Cox held that plaintiffs failed to plead fraudulent concealment with the requisite particularity, where they (1) failed to plead specific affirmative conduct of defendants to conceal, separate from the alleged conspiracy, and (2) grouped all defendants together with respect to concealment representations. *Id*. at 663-65. [9]  Similarly, in *In re Pool Products Distribution Market Antitrust Litig.*, 988 F. Supp. 2d. 696 (E.D. La. 2013), appeal docketed, No. 16-30885 (5th Cir. Aug. 2, 2016), the court rejected the plaintiffs' fraudulent concealment argument based on the failure to plead specific facts to satisfy Rule 9(b) that would apply to each defendant. "Moreover, a complaint alleging fraud may not group the defendants together; instead, it must plead specific facts that satisfy Rule 9(b) requirements as to each defendant.  *Id*.

---

[9] *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012), is not to the contrary. There, the Court held that allegations of "numerous instances in which the conspirators actively tried to hide their conduct" lacked specificity and "fell short of meeting the standard required to support a claim of fraudulent concealment." *Id*. at 447. Those disregarded allegations included that Defendants "Utiliz[ed] covert meetings" and gave "false and pretextual reasons" for pricing, as they "lack[ed] the requisite particularly, failing to specify 'the time, place, and content of the alleged' fraudulent acts," citing *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 505 (6th Cir. 2007).

at 722-23. "A blanket allegation that all of the Manufacturer Defendants communicated with Pool in secret to cover up the alleged wrongdoing is insufficient under Rule 9(b)." *Id.* at 725.

Here, there are no allegations that <u>Meritor</u> fraudulently concealed any actions or facts, either before or after the 2007 sale of its exhaust system business. Plaintiffs allege that ███ ████████████████████████████████████████████████████████ (EPP Compl. ¶ 168, ADP Compl. ¶ 192). Plaintiffs' list of meeting participants does not include Meritor. Nor are Plaintiffs' conclusory allegations that the conspiracy was "self-concealing" (EPP Compl. ¶ 210; ADP Compl. ¶ 234) adequate to toll the statute of limitations. *See Pinney Dock*, 838 F.2d at 1471-72 (pleading that a conspiracy is self-concealing fails to satisfy fraudulent concealment in the Sixth Circuit); *Dry Cleaning & Laundry Institute of Detroit, Inc. v. Flom's Corp.*, 841 F. Supp. 212, 218 (E. D. Mich. 1993) (under *Pinney Dock*, "conduct of clandestine meetings and telephone conversations is not sufficient to establish the requisite 'affirmative acts' of fraudulent concealment").

Even viewed in the light most favorable to Plaintiffs, allegations referencing conduct of other Defendants in other, unrelated matters and other, unrelated investigations do not suffice to implicate Meritor in any fraudulent concealment with respect to the Exhaust Systems business. *See* pp. 19-20 below. As this Court recently recognized in dismissing claims by the truck and equipment dealers against the Mitsubishi Electric defendants, "boilerplate allegations as to all Defendants do not salvage" a complaint as to a particular defendant against whom there are few plausible factual allegations. *In re: Automotive Parts Antitrust Litig. (In re: Wire Harness Systems)*, 2015 WL 10372437, * 3 (E.D. Mich. Dec. 30, 2015).

Plaintiffs allege that they had no knowledge of the conspiracy until March 25, 2014, the date that Tenneco "publically" [sic] disclosed in an 8-K report that it received a subpoena from

the DOJ, and no notice of "Defendants Bosal, Eberspacher and Faurecia's participation in the combination or conspiracy" until May 2015, when "Plaintiffs were provided with confidential information." (EPP Compl. ¶ 202 & n. 8; ADP Compl. ¶ 223 & n. 5). Plaintiffs do not even mention Meritor in their fraudulent concealment allegations.

In the absence of fraudulent concealment allegations that implicate Meritor either before or after the 2007 sale of its exhaust system business assets, Meritor's withdrawal by its publicly announced sale of its exhaust systems business assets, and the un-tolled period from withdrawal to filing of the Complaints, the statutes of limitations require dismissal of all claims against Meritor pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AGAINST MERITOR SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH A COGNIZABLE DANGER OF A RECURRENT ALLEGED VIOLATION BY MERITOR.

There is no allegation that Meritor participated in the exhaust systems business after the sale of its exhaust systems business assets in 2007, or that Meritor is likely to participate in the exhaust system business in the future, much less that Meritor is likely to engage in a price-fixing conspiracy in that business. Plaintiffs therefore cannot establish a cognizable danger of a recurrent alleged violation by Meritor, and their claims under Section 16 of the Clayton Act, 15 U.S.C. § 26, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs' request for injunctive relief is based on Section 16 of the Clayton Act, 15 U.S.C. § 26, which allows private suits for injunctions against "threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of

10

equity."[10] The purpose of an injunction is to prevent future violations; for Plaintiffs to justify equitable relief, they must show "threat of injury from an impending violation ... or from a contemporary violation likely to continue or recur." *In re Automotive Parts Antitrust Litig. (In re Wire Harness Cases)*, 2013 WL 2456584 at *14 (E.D. Mich. June 6, 2013), *quoting In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 13 (1st Cir. 2008), and *citing United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). *Accord*, *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 399-400 (3d Cir. 2000) (plaintiffs must demonstrate "(1) threatened loss or injury cognizable in equity; (2) proximately resulting from the alleged antitrust injury."; *Dayco Corp. v. Firestone Tire & Rubber Co.*, 523 F.2d 389, 395 (6th Cir. 1975); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 210 (S.D.N.Y. 2012) (dismissing class claim for injunctive relief where "Plaintiff's claim of future injury is wholly speculative.").[11]

The Sixth Circuit in *Dayco* held that plaintiff was not entitled to injunctive relief against an alleged antitrust violation in the replacement tire market where the plaintiff "disavowed any intention of re-entering the replacement tire market" and therefore was not "under any threat of loss or damage from the illegal acts of the defendants" in that market. 523 F.2d at 395. Likewise, in *B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 666-68 (10th Cir. 2006), the court held that the plaintiff lacked antitrust injury and had no standing to seek injunctive relief where it was "no longer [even an indirect] purchaser . . . from the appellees and

---

[10] While the four-year statute of limitations in 15 U.S.C. § 15b does not apply to actions for injunctive relief under 15 U.S.C. § 26, as discussed in the text, the plaintiff must show an imminent threat of harm from an antitrust violation.

[11] While the Supreme Court has never held that indirect purchasers like Plaintiffs have standing to obtain injunctive relief under Section 16, *see Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111 n. 6 (1986), several circuits have held that indirect purchasers have standing to obtain injunctive relief in appropriate circumstances. *See, e.g.*, *B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 666-68 (10th Cir. 2006).

11

has failed to show any possibility that it might resume such purchases in the future." 439 F.3d at 668.

The holdings of *Dayco* and *B-S Steel* are directly applicable here. In the present case, Plaintiffs admit that Meritor sold its exhaust system business at least eight years ago, do not allege that Meritor continued to participate in the exhaust business at any time after the sale of its business, and do not allege that Meritor is at this time engaged in the exhaust systems business. Further, Plaintiffs do not allege that they expect to purchase exhaust systems, either directly or indirectly, from Meritor in the future.  Nor is there any allegation that Meritor is likely to engage in a conspiracy in the future to fix prices or rig bids regarding exhaust systems. Plaintiffs have failed to meet the threshold requirements to support a claim for injunctive relief against Meritor under Section 16 of the Clayton Act, and their claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III.    PLAINTIFFS FAIL TO SATISFY THE PLEADING REQUIREMENTS OF *TWOMBLY* AND *IQBAL.*

### A.    Plaintiffs Have Failed to Plausibly Plead That Meritor Participated in An Alleged Price-Fixing Conspiracy.

The Plaintiffs' have failed to meet the threshold level of pleading required to support the allegation that Meritor participated in an unlawful conspiracy. Antitrust conspiracy claims should be dismissed unless the plaintiff alleges facts sufficient to "nudge[] [the] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plausible claim requires factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts should accept neither legal conclusions couched as factual allegations, *see Twombly*, 550 U.S. at 555, nor "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) as sufficient to establish a plausible claim. "Naked assertions" are

12

insufficient to establish a plausible claim for relief.  *Id.*

Under *Twombly* and *Iqbal*, the district court must be the "gatekeeper" to prevent plaintiffs from dragging a defendant into expensive discovery based on insufficient factual allegations. See *CBC Companies, Inc. v. Equifax, Inc.*, 561 F.3d 569, 571 (6th Cir. 2009) ("Particularly in the antitrust context, the Supreme Court cautions that 'a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.'") (citing *Michigan Div.-Monument Builders of N. Am. v. Mich. Cemetery Assn.*, 524 F.3d 726 (6th Cir. 2008)).

These axioms ring out in this case as to Meritor. In order to state a Sherman Act conspiracy claim, a plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556. The complaint must allege facts indicating that the conspirators "came to a mutual understanding to try to accomplish a common and unlawful plan," *Ruttenberg v. Jones*, 283 F. App'x 121, 132 (4th Cir. 2008) (per curiam) (citation omitted) (internal quotation marks omitted), and must "tend to exclude the possibility that the alleged co-conspirators acted independently." *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 281 (4th Cir. 2012).

Plaintiffs cannot satisfy the pleading requirements by generalized allegations involving other defendants or other conspiracies. It is well settled that Plaintiffs must satisfy the *Twombly* pleading requirement as to each defendant. *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016) ("Plaintiffs must be able to separately state a claim against each and every defendant joined in this lawsuit."); *Concord Assocs., L.P. v. Entm't Props. Trust*, 2014 WL 1396524, at *22 (S.D.N.Y. Apr. 9, 2014) ("required factual content must be pleaded with respect to *each defendant* named in the complaint"); *In re Processed Egg Products Antitrust Litig.*, 821

F. Supp. 2d 709, 719-20 (E.D. Pa. 2011) ("a complaint must plausibly suggest that the *individual* defendants actually joined and participated in the conspiracy . . . . ").

Taking Plaintiffs' factual allegations as true, there is nothing in either Complaint that takes Plaintiffs' claims against Meritor from the "conceivable" to the "plausible." The Exhaust System case is different from other cases the Court has considered, and Meritor is different from any other defendant:

a.   There is no allegation that Meritor is a target of the DOJ's broad criminal investigation into illegal price fixing and bid rigging in the auto parts industry, or the EC investigation/raids of the South African Competition Commission activities (EPP Compl., ¶¶ 5-9; 113-124; ADP Compl. ¶¶ 139-150).

b.   There is no allegation that Meritor is a cooperating defendant or has made any disclosure of a government subpoena.

c.   There is no allegation that Meritor (or any other defendant) has pled guilty to price fixing in exhaust systems, or been indicted for such an offense (EPP Compl. ¶¶ 127-166; ADP Compl. ¶¶ 153-190).[12]

d.   There is no allegation that Meritor is mentioned in the Tenneco 8-K report (EPP Compl. ¶¶ 201-205 & n. 8; ADP Compl. ¶¶ 222-226).

e.   There is no allegation that Meritor ██████████ ████████████████████████████ (EPP Compl. ¶ 168; ADP Compl. ¶¶ 192).

f.   There is no allegation that Meritor ████████ ████████████████ (EPP Compl. ¶ 172; ADP Compl. ¶ 196).

g.   There is no allegation that Meritor ████████ █████████████████████ (EPP Coml. ¶ 174; ADP Compl. ¶ 198).

h.   There is no allegation that Meritor ██████████ ███████████ (EPP Compl. ¶ 172; ADP Compl. ¶ 196), ████████████████████ (EPP Compl. ¶ 174; ADP Compl. ¶ 198).

---

[12]The only purportedly factual allegations in the Complaints involve Tenneco, which has disclosed that it is cooperating with the DOJ. (EPP Compl. ¶ 125; ADP Compl. ¶ 151). Plaintiffs presumably had access to all of the information Tenneco provided to the Department of Justice, because an amnesty applicant has an obligation to cooperate fully with civil claimants. *See* PL 108-237, § 213, 15 U.S.C. § 1 Note. Yet Plaintiffs still failed to plead facts from which an agreement involving Meritor can be inferred.

While Plaintiffs devote much of their Complaints to allegations of investigations and guilty pleas involving <u>different</u> suppliers and <u>different</u> types of auto parts, such as wire harnesses (EPP Compl. ¶¶ 113-120, 127-166; ADP Compl. ¶¶ 139-146, 153-190), these allegations do not implicate either the exhaust systems business generally, or Meritor in particular as is required to plausibly suggest that Meritor actually joined and participated in any alleged conspiracy.

Nor do Plaintiffs' broad quotes from DOJ press releases concern exhaust systems or Meritor. For example, Plaintiffs quote from DOJ press releases regarding Furukawa (EPP Compl. ¶ 128; ADP Compl. ¶ 154, quoting Ex. 4), Yazaki and DENSO (EPP Compl., ¶ 130, ADP Compl. ¶ 156, quoting Ex. 5).[13] These press releases make no mention of exhaust systems in general or Meritor in particular. Similarly, Plaintiffs quote a press release by then U.S. Attorney General Eric Holder about "collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies" (EPP Compl. ¶ 143; ADP Compl. ¶ 167, quoting Ex. 6). Again, the press release does not mention exhaust systems in general or Meritor in particular. The crescendo of Plaintiffs' recitation of government activities is a diagram of a car body, with bolded captions of those "auto products targeted by the conspirators". (EPP Compl. ¶ 144; ADP Compl. ¶ 168). But the diagram once again fails to include exhaust systems in general or Meritor in particular.

Plaintiffs' allegations do not nudge their claims over the line to plausibility as *Twombly* requires. The law does not permit a factual inference of wrongdoing based on the conduct of other parties colluding in the same general industry but as to other products. As this Court noted, "[a] defendant's conduct in a conspiracy in [one product line] does not establish its involvement

---

[13] Because the DOJ press releases are referenced in the Complaints and central to the Plaintiffs' allegations, the Court can considered them in reviewing a Rule 12(b)(6) motion. *See Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008).

in [another] conspiracy." *In re: Automotive Parts Antitrust Litig. (Wire Harness Systems)*, 2015 WL 10372437, * 4 (E.D. Mich. Dec. 30, 2015) (citing *Twombly*, 550 U.S. at 679).

Here, there is no allegation that Meritor—or any other exhaust system Defendant—has pled guilty to price fixing of exhaust systems or any other automotive product. "Boilerplate allegations as to all Defendants" do not suffice as to Meritor as an individual defendant. *Id. See also Hinds County, Miss. v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 512 (S.D.N.Y. 2009) (dismissing antitrust conspiracy claims due to lack of individualized allegations against certain defendants; context of government investigations and a leniency program participant were insufficient to fill the factual gaps). *Accord*, *In Re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1170 (D. Idaho 2011) ("An antitrust plaintiff must 'allege that each individual defendant joined the conspiracy and played some role in it . . .'").

Only three paragraphs of each Complaint purport to allege facts concerning Meritor. These allegations fail to establish an illegal agreement by Meritor and fail to push the claim over the line of plausibility:

    a.    Plaintiffs allege that ███████████████████████████████████████████████████████████████████████████ (EPP Compl. ¶ 170; ADP Compl. ¶ 194).

    b.    Plaintiffs allege that ███████████████████████████████████████████████████████████████████████████████████████ (EPP Compl. ¶ 171; ADP Compl. ¶ 195).

    c.    Plaintiffs allege that ███████████████████████████████████████████████████████████████████████████████ (EPP Compl. ¶ 173; ADP Compl. ¶ 197).

Even if taken as true, the allegations do not contain enough factual matter to demonstrate that any agreement (let alone an illegal one) was made or that there was a mutual understanding between Meritor and any other party, including Tenneco, to unlawfully fix prices or rig bids regarding exhaust systems. The most specific allegation against Meritor is in (a), but even it fails to allege anything about Meritor's actions—including whether or what Meritor actually bid.  In (b), Plaintiffs do not allege who at Meritor was allegedly contacted or what Meritor said or did; the allegation solely reflects a Tenneco perception. And again, the allegation fails to allege anything about Meritor's actions—including whether or what Meritor actually bid. In (c), there is no allegation that Meritor asked for Tenneco's pricing information or responded in any way. Once again, the allegation simply reflects Tenneco's perception. And again, the allegation fails to allege anything about Meritor's actions—including whether or what Meritor actually bid. These lone paragraphs stand in sharp contrast to the specificity with which Plaintiffs plead facts as to other Defendants and underscore the lack of factual allegations supporting any claim that Meritor unlawfully fixed prices or rigged bids.

In *Int'l Constr. Products LLC v. Caterpillar Inc.*, 2016 WL 264909 (D. Del. Jan. 21, 2016), the seller of heavy construction equipment brought claims under the Sherman and Clayton Acts against a group of manufacturers alleging boycott, exclusive dealing, various monopolization claims and an unlawful merger.  The district court dismissed the complaint for a lack of factual allegations that "directly show[ed] the existence of an agreement between the Manufacturer Defendants." *Id*. at *3. "That the complaint sets forth facts showing that an agreement was possible is not enough." *Id*. at *4.

Further, "Section 1 of the Sherman Act does not require sellers to compete: it just forbids their agreeing not to compete." *In Re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp.

2d 1141, 1170 (D. Idaho 2011). The Sixth Circuit in *Erie Cty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860 (6th Cir. 2012), affirmed the dismissal of a complaint alleging that defendants conspired to fix the price of rock salt sold in northern Ohio in violation of the state antitrust law, which the Court construed in accordance with federal law. *Id.* at 867. In affirming the dismissal, the Sixth Circuit rejected the inference of a conspiracy based on the allegation that the defendants failed to compete:

> With respect to the third factor, Erie County faults the defendants for failing to grab allegedly plum business opportunities. As the complaint puts it, "[s]uspicious bidding patterns occurred when the Defendants failed to seek bids that would generate higher profit margins, *i.e.*, when the Defendants would contract with a county that is farther from their mine or stockpile instead of a county that is closer to their salt source." The argument, in other words, is that because the product being sold is homogenous and fungible, and because all costs except for transportation are constant, the defendants' failure to aggressively compete and bid low for accounts that are closer to their respective mines signifies a "fail[ure] to seek bids that would generate higher profits." But this is exactly the sort of failure-to-compete claim that *Twombly* rejected.

*Id.* at 869-70. *See also DataCell Ehf. v. Visa, Inc.*, 2015 WL 4624714 (ED Va. July 30, 2015) (under *Twombly*, parallel conduct is not enough to show concerted action).

Alleging an opportunity to conspire is not enough. *See In re Travel Agent Commission Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (upholding dismissal where complaint alleged that defendants' executives met and had an opportunity to conspire); *In re Pool Prods. Distrib. Market Antitrust Litig.*, 988 F. Supp. 2d 696 (E.D. La. 2013) (allegations of conspiracy were "vague and inconsistent"; opportunity to conspire is not enough); *In re Fresh and Process Potatoes Antitrust Litig.*, 843 F. Supp. 2d 1141, 1174-75 (D. Idaho 2011) (allegations of opportunity to join the conspiracy "are insufficient to 'nudge plaintiffs' claims across the line from the conceivable to the plausible," citing *Twombly*). In the present case, Plaintiffs' allegations against Meritor are similarly insufficient.

In *Hinds County, Miss. v. Wachovia Bank, N.A. (In re Municipal Derivatives Antitrust*

*Litig.*), 620 F. Supp. 2d 499 (S.D.N.Y. 2009), the district court analyzed the allegations against each moving defendant and granted or denied its motion depending on the level of specificity as to that defendant.  Instructive here, the court rejected plaintiffs' attempt to bootstrap sparse allegations against certain defendants through allegations of a "history of fraud" in the municipal derivative industry and investigations, involving raids and subpoenas, in that industry.  Even allegations that particularly named individuals participated in communications do not make a conspiracy more plausible under *Twombly* without more specific details.  *Id*. at 518.  In short, factual allegations as to each defendant must be assessed, and a broad context in the industry or specifics as to certain defendants do not suffice as to other defendants.  *Id*. at 513-514.

While plaintiffs will argue that their factual allegations are only ███████████████ ████████████████████████████ (EPP Compl. ¶ 167; ADP Compl. ¶ 191), the dearth of any facts that actually implicate Meritor as a participant in the alleged conspiracy fail the *Twombly* standard and cannot fairly satisfy the pleading requirements sufficient to support a claim against Meritor in this antitrust case.

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above, the Court should dismiss all claims by the End-Payor Plaintiffs and Auto Dealer Plaintiffs against Meritor, Inc. pursuant to Fed. R. Civ. P. 12 (b)(6).

| | |
|---|---|
| Gretchen Jankowski | Respectfully submitted, |
| Cindy D. Hinkle | |
| Wendelynne J. Newton | s/Larry J. Saylor |
| Buchanan, Ingersoll & Rooney, P.C. | Larry J. Saylor  (P28165) |
| One Oxford Centre | A. Michael Palizzi (P47262) |
| 301 Grant Street, 20th Floor | Miller, Canfield, Paddock and Stone, PLC |
| Pittsburgh, PA  15219-1410 | 150 W. Jefferson Avenue, Suite 2500 |
| (412) 562-8800 | Detroit, MI  48226 |
| Gretchen.jankowski@bipc.com | (313) 963-6420 |
| Cindy.hinkle@bipc.com | saylor@millercanfield.com |
| Wendelynne.newton@bipc.com | palizzi@millercanfield.com |

Attorneys for Meritor, Inc.

## <u>PROOF OF SERVICE</u>

I hereby certify that on September 15, 2016, I electronically
filed the foregoing document with the Clerk of the Court
using the ECF system which will send notification of such
filing to all counsel of record and served all attorneys of record
via email.

s/Larry J. Saylor
Larry J. Saylor  (P28165)
Miller, Canfield, Paddock & Stone, PLC
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
saylor@millercanfield.com

Attorney for Meritor, Inc.

20

## LIST OF EXHIBITS TO MOTION TO DISMISS

Exhibit 1          ArvinMeritor, Inc., Form 8-K (May 17, 2007)

Exhibit 2          ArvinMeritor, Inc., Form 8-K/A (June 1, 2007)

Exhibit 3          Statute of Limitations For State Law Claims

Exhibit 4          September 29, 2011 Department of Justice press release regarding Furukawa Electric Co., Ltd.

Exhibit 5          January 30, 2012 Department of Justice press release regarding Yazaki Corp., Denso Corp.

Exhibit 6          September 26, 2013 Department of Justice press release by Attorney General Eric Holder